IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| Plaintiff, | § § § |
| v. | §  5:25-CR-388-XR § § |
| JAIME ALBERTO QUINTANILLA-CHAVEZ, | § § § |
| Defendant. | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS FOR INABILITY TO PROVE CHARGE

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES the United States of America, by and through the United States Attorney for the Western District of Texas, and hereby files this response to Defendant's Motion to Dismiss for Inability to Prove Charge (Doc. 37).

### Factual Summary

The Government incorporates by reference the facts from its response to defendant's other Motion to Dismiss (Doc. 38). In addition, the Government anticipates that at a hearing on this motion, Homeland Security Investigations (HSI) Special Agent (SA) William Carl will provide testimony about his role in the June 20, 2025 immigration operation, and the injuries he received. Specifically, SA Carl will testify that after U.S. Immigration and Customs Enforcement (ICE) Enforcement and Removal Operations (ERO) Deportation Officer (DO) Hector Hernandez announced over the radio that he positively identified the defendant, SA Carl pulled in behind the defendant and activated his emergency lights. Once the defendant pulled over, the defendant got on his phone and refused all commands to roll down his window. SA Carl will testify that due to

1

the part of town they were in, as well as the people around them yelling profanities, it became imperative to get the defendant out of the truck. SA Carl and DO Hector Hernandez decided to breach the defendant's window. SA Carl will testify that just as he was about to breach the window, the defendant evaded in his motor vehicle. SA Carl will testify that the arm he used to breach the window was caught on the broken window glass causing bodily injury as the defendant drove away. SA Carl will testify that his skin was scraped, torn, and punctured. He endured a painful debridement to remove any glass pieces from his injury.

<u>Argument</u>

The defendant is charged with violating 18 U.S.C. §111(a) and (b). The statute states:

(a)In General.—Whoever—
(1)forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties;
(b)Enhanced Penalty.—
Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.

"[T]his circuit has interpreted ... § 111 to create three separate offenses: '(1) simple assault; (2) more serious assaults but not involving a dangerous weapon; and (3) assault with a dangerous weapon.' " *United States v. Williams*, 520 F.3d 414, 420 (5th Cir.) (*quoting United States v. Ramirez*, 233 F.3d 318, 321 (5th Cir.2000), *overruled on other grounds by United States v. Cotton*, 535 U.S. 625, 629–31, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002)), *cert. denied*, ––– U.S. ––––, 129 S.Ct. 111, 172 L.Ed.2d 89 (2008) (mem.). However, this court has never ruled on whether the additional conduct proscribed in § 111(a)(1) requires, at a minimum, underlying assaultive conduct. " *United States v. Williams*, 602 F.3d 313, 316 (5th Cir. 2010).

The Fifth Circuit Pattern Jury Charge states:

For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

First: That the defendant forcibly assaulted [resisted] [opposed] [impeded] [intimidated] [interfered with] a federal officer, as described below;

Second: That the federal officer was forcibly assaulted [resisted] [opposed] [impeded] [intimidated] [interfered with] while engaged in the performance of his [her] official duty or on account of the performance of official duties;

Third: That the defendant did such acts intentionally;

Fourth: That in doing such acts, the defendant used a deadly or dangerous weapon or inflicted bodily injury.

The Government's theory of prosecution is that the defendant forcibly resisted, opposed, impeded, intimidated, and interfered with DO Hernandez and SA Carl while they were engaged in the performance of official duties, and that in doing such acts, inflicted bodily injury to SA Carl. At a trial, the Government will not charge the defendant with forcible assault.

## A. Infliction of Bodily Injury

The defendant argues that SA Carl caused his own bodily injury when he breached the driver's side window. The defendant points to *Williams* to support the claim that the defendant must forcibly inflict the officer's injury, rather than the injury resulting from the officer's action. First, the defendant in *Williams* was charged with forcibly assaulting law enforcement so the defendant must engage in the assaultive conduct. However, the allegations in this case are that the defendant forcibly resisted, opposed, impeded, intimidated, and interfered with law enforcement, not forcibly assaulted law enforcement. Second, *Williams* doesn't hold or even imply that the only way to violate the whole of the statute is for the defendant to physically assault law enforcement. The requirement of a physical assault applies when the defendant is charged with forcible assault- but not to the other ways to violate 111(a). There is no limiting language in the statute, Fifth Circuit

3

Pattern Jury charge, or caselaw that says the injury must be caused completely and only by the defendant without regard to any action on the part of the injured agent.

In *Williams*, while the officers were attempting to handcuff her, she was swinging her arms and pulling her arms away from the officers. As they struggled, the defendant pulled her arms away, striking the officer. When they forced her to the ground, defendant again pulled away, striking an officer in the jaw. The officers testified they didn't think the defendant was trying to fight and that she didn't intentionally hit them. Defendant was charged with violating § 111(a)(1), without reference to any physical contact between Williams and the officers, and was convicted and appealed. Id. at 314-315.

In *Williams*, the Fifth Circuit posed the question: "[C]an a defendant be convicted of forcible resistance under this statute without having committed an underlying assault?" *Id*. at 316. However, this court has never ruled on whether the additional conduct proscribed in §111(a)(1) requires, at a minimum, underlying assaultive conduct. *Id*. The Fifth Circuit stated 18 U.S.C. §111 "is not simply to protect federal officers by punishing assault, but also to "deter interference with federal law enforcement activities" and ensure the integrity of federal operations by punishing obstruction and other forms of resistance. *United States v. Feola*, 420 U.S. 671, 678, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975); *see also id*. at 679–82, 95 S.Ct. 1255 (discussing the legislative history of § 111's predecessor statute). *Williams*, 602 F.3d 313, 317–18 (5th Cir. 2010).

The defendant argues that the word "inflicts" in 111(b) refers only to the defendant's conduct, and because the defendant considers the breaking of the window SA Carl's conduct, the Government can't prove 111(b). However, that position would read an additional element into 111(b), when that is a requirement that simply isn't there; not in the statute, not in caselaw, and not in the Fifth Circuit's Pattern Jury Charge. The Fifth Circuit Pattern Jury Charge third element

4

explicitly states that the intentionality applies to such acts- being assault, resist, oppose, impede, intimidate, and interfere with, not the fourth element that follows. The Fifth Circuit has had ample opportunity to add that the intentionality to the fourth element, but has not. Further, in the fourth element, the Fifth Circuit uses the language "That in doing such acts…the defendant inflicted bodily injury." The emphasis is clearly on the defendant doing the acts of resisting, for example, that led to the injury. In this case, the defendant doing such intentional acts inflicted bodily injury on SA Carl. The defendant had complete control over how the injury was inflicted. The large truck was an extension of the defendant, and he should be responsible for the injury to SA Carl. His voluntary, intentional fleeing in his vehicle caused the injury.

In *United States v. Garcia–Camacho*, 122 F.3d 1265 (9th Cir.1997), the Ninth Circuit recognized the significance of the defendant's resistive behavior that led to an agent's assault. The defendant in this case was an illegal alien. When Border Patrol agents approached the defendant to take him into custody, he turned and engaged an agent in a violent assault. They were in close locked combat. As a result of that combat, the agent was thrown to the ground, and his ankle was seriously broken. *Id.* at 1267.

The Appellant/ Defendant argues on appeal that the injury incurred by the agent was a direct result of the agent's conduct, not his own. *Id* at 1268. The Court rejected this position. "Distinguishing between the conduct he initiated (the initial struggle) and the conduct the agent initiated (the arrest), Appellant artificially attempts to turn a continuous action into a series of separate events." *Id*.1268-1269. Regarding the "serious bodily injury" sentencing enhancement, the Court admonished the defendant: "Appellant's crass effort to characterize Agent Manen's injury as merely a 'job hazard' is equally unavailing. In speculating that 'the exact same injury could have resulted from physical contact that was initiated by the agent during the routine arrest of any person

5

attempting illegal entry,' Appellant ignores the fact that Agent Manen was not injured while handcuffing a passive defendant, but rather while engaged, in the district court's words, in 'close locked combat.' The fact that Appellant did not kick the agent's ankle or otherwise come into contact with it does not demonstrate that his behavior was not the cause of the injury." *Id* at 1269.

Appellant argues he did not "inflict" bodily injury on Agent Manen, and that section 111(b) must require either that a defendant "intend" to cause the injury or that there is a heightened causal relationship between a defendant's conduct and the injury. *Id*. The Ninth Circuit found this unavailing: Section 111(b) contains no intent to injure requirement. *Id*. Moreover, Appellant's efforts to argue that "to inflict" means more than "to cause" similarly fail. Webster's Third New International Dictionary (1976) defines "inflict" as: "to lay (a blow) on; [to] cause (something damaging or painful) to be endured." As demonstrated above, Appellant's conduct did directly cause Agent Manen's injury. Appellant therefore did "inflict" bodily injury on Agent Manen, and the district court did not err in imposing sentence under the section 111(b) enhanced penalty provision. *Id*.

The defendant cites to *United States v. Zabawa*, 719 F.3d 555 (6th Cir. 2013) to support a heightened requirement for what "inflicts" means. In that case, while Zabawa was in federal custody, he became agitated. Zabawa lunged at an agent and started punching him. The agent blocked the attack, and then got Zabawa onto the floor by elbowing, kneeing, and headbutting him. After a brief struggle, the agent handcuffed Zabawa with the help of other officers. During the fight, the agent suffered a cut over his eye that required six stitches. The agent later testified that he did not know whether the cut happened when he headbutted Zabawa or when Zabawa punched him. *Id*. at 558.

The Sixth Circuit opined that "inflict" is a more specialized term than "cause." *Id.* at 560.

6

*See United States v. Jackson*, 310 F.3d 554 (7th Cir.2002) ("inflict" is more restrictive than "cause."). Thus, as used in § 111(b), "inflict" refers to physical, not proximate, causation. The person whose action was the direct physical cause of [the agent]'s laceration, therefore, is the person who inflicted it for purposes of § 111(b). *Id*. And even the government admits that [the agent] himself might have been that person. *Id*. Even though the defendant in *Zabawa* is directly responsible for forcibly resisting arrest that resulted in injury to an agent, the Sixth Circuit incredibly finds the defendant must physically inflict the bodily injury as opposed to his forcible resisting conduct inflicting the bodily injury. This position is contrary to the spirit and purpose of the statute, which is to punish individuals who resist, impede, etc. resulting in bodily injury.

Even though *Garcia-Camacho* is an assault case, the language logically extends to resisting opposing, impeding, intimidating, and interfering. This Court should reject *Zabawa* and *Jackson's* narrow and restrictive definition of "inflict." Such a ruling in fact would frustrate the statute's purpose to protect federal officers from a wide range of harmful conduct. It should matter that the defendant's forcible, intentional resisting leads to the injury of a federal agent. To restrict the word "inflict" as the Sixth and Seventh Circuits suggest would needlessly render all such injuries unimportant and insignificant under the law, when they are a result of non-assaultive conduct in 111(a) that also violates the statute.

### B. Defendant Intended to Flee in his Vehicle

The defendant next argues the Government cannot prove that the defendant acted intentionally in evading in his motor vehicle, arguing instead it is unclear why the white Dodge truck lurched forward. However, a review of the DPS body camera clearly shows the defendant intentionally driving away in his motor vehicle. To begin, the truck does not lurch forward, it smoothly drives away. Second, you can tell the defendant is in full control of the truck and trailer

7

because he is steering the truck and trailer around a parked car on the side of the street to avoid hitting it. This argument fails.

### C. Defendant Knew the Agents were Law Enforcement

The defendant questions whether the Government can prove that the defendant knew the victim was a federal officer. On the issue, the Fifth Circuit Pattern Jury charge for 18 U.S.C §111 instructs:

It is not necessary to prove the defendant knew the person being forcibly assaulted was, at that time, a federal officer carrying out an official duty, so long as it is established beyond a reasonable doubt that the person assaulted was, in fact, a federal officer acting in the course of his [her] duty and that the defendant intentionally committed a forcible assault upon that officer.

On the other hand, the defendant would not be guilty of an assault if the evidence leaves you with a reasonable doubt as to whether the defendant knew the person to be a federal officer and only committed such an act because of a reasonable, good faith belief that the defendant needed to defend himself [herself] against an assault by a private citizen.

For all three forms of these offenses, there is no requirement that the defendant know the victim is a federal officer. *See Feola*, 95 S. Ct. 1255, 1264 (1975); *United States v. Moore*, 958 F.2d 646, 649 (5th Cir. 1992); *see also United States v. Lopez-Sanchez*, No. 21-60082, 2021 WL 5119714 at *1–*2 (5th Cir. Nov. 3, 2021) (unpublished) (per curiam).

Yet, there is ample proof that the defendant knew he was encountered by law enforcement. In this case, the defendant knew he was encountered by law enforcement at the very beginning of the encounter. Notably, when DO Hernandez and SA Carl activated their blue and red flashing law enforcement lights, the defendant acknowledged this by pulling over. And then, DO Hernandez went to the driver's side window and identified himself as law enforcement. DO Hernandez was wearing a green bullet proof vest with a patch saying "POLICE" across his chest. Incidentally, even if the defendant only speaks Spanish, the Spanish word for POLICE is extremely comparable in spelling: POLICIA. A police badge was displayed on the top of his chest. Also affixed to the

front of his vest was tactical equipment such as a handheld radio, flashlight, handcuff key, and handcuffs in a pouch. SA Carl was also displaying his badge. HSI SA Carl approached the passenger side at the same time DO Hernandez engaged the defendant. They were operating as a team. It is not a credible argument to suggest that after pulling over, seeing DO Hernandez at his driver's side window wearing indicia of law enforcement, hearing DO Hernandez identify himself, and showing DO Hernandez his Honduran Identification that he thought they were private citizens.

Congress intended to protect both federal officers and federal functions. *Feola*, 420 U.S. at 679. The Government asks this Court to rule consistent with the spirit and purpose of 18 U.S.C. §111 and deny the defendant's motion.

Respectfully submitted,

JUSTIN R. SIMMONS
UNITED STATES ATTORNEY

*/s/*
Sarah Wannarka
Assistant United States Attorney
Texas Bar 24013710
601 NW Loop 410
San Antonio, TX 78216
210.384.7100/ fax 210.384.7118

CERTIFICATE OF
SERVICE

I hereby certify that on the August 18, 2025, a true and correct copy of the foregoing instrument was electronically filed with the Clerk of the Court using the CM/EF System and thereby served on the attorney of record.

*/s/*
Sarah Wannarka
Assistant United States Attorney

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | § |
| | § |
| Plaintiff, | § |
| | §   **5:25-CR-388-XR** |
| v. | § |
| | § |
| **JAIME ALBERTO QUINTANILLA-CHAVEZ,** | § |
| | § |
| Defendant. | |

**ORDER**

Having considered the record, the Defendant's Motion to Dismiss for Inability to Prove (Doc. 37), and the Government's Response,

IT IS HEREBY ORDERED that the Defendant's motion is DENIED.

SIGNED AND ENTERED this _____, 2025.

_____
HONORABLE XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE