United States District Court
Western District of Texas
San Antonio Division

| | |
|---|---|
| United States of America,<br>    Plaintiff,<br><br>v.<br><br>Jaime Alberto Quintanilla-Chavez,<br>    Defendant. | No. SA-25-CR-388-XR |

**UNITED STATES' MOTION TO RECONSIDER ORDER DISMISSING INDICTMENT**

COMES NOW the United States of America, by and through this its United States Attorney and his undersigned Assistant, and files this its Motion to Reconsider the Order Dismissing the Indictment, and for cause would show unto this Court the following:

Jaime Alberto Quintanilla-Chavez filed two dispositive motions. In the first, citing Federal Rule of Criminal Procedure 12(b)(3)(3)(v), he argued that the indictment should be dismissed on the grounds that, as a matter of law, the government could not prove the charge brought by the grand jury, a violation of 18 U.S.C. § 111(a) & (b). In the second, he argued that the government's conduct was so outrageous as to have violated due process. He also urged the court to suppress evidence, challenging the stop of his vehicle as violative of the Fourth Amendment, and alternatively, arguing that suppression was an appropriate sanction to redress what he characterized as excessive force used to arrest him.

After a hearing, this Court entered an order dismissing the indictment, concluding that the government could not prove the charges beyond a reasonable doubt, and finding outrageous government conduct that it determined required dismissal. Finally, and although mooted by the dismissal, this Court suppressed the videotapes taken by Texas Department of Public Safety agents (TX DPS) as a sanction for what it concluded was excessive force used to secure custody of Quintanilla. The government respectfully suggests this Court erred in granting this relief to Quintanilla and requests that it reconsider and reverse these rulings.

I. **Rule 12 does not authorize dismissal of the charges against Quintanilla.**

Turning first to this Court's decision to dismiss the indictment under Rule 12, the government respectfully suggests this Court erred in granting this relief to Quintanilla where the evidence was disputed and required factual findings in order to resolve evidentiary conflicts or ambiguities, and by construing disputed facts against the government. In evaluating whether the government could prove its case, the government respectfully contends this Court exceeded the limitations of permissible pretrial review of the indictment. The charge should not have been dismissed by way of this pretrial Rule 12 motion.

"The validity of an indictment is governed by practical, not technical considerations, and the basic purpose behind an indictment is to inform a defendant of the charge against him." *United States v. Fairley*, 880 F.3d 198, 206 (5th Cir. 2018), *quoting United States v. Cooper*, 714 F.3d 873, 877 (5th Cir. 2013). An indictment is legally sufficient if the charging language includes the essential elements of the offense charged, the elements are described with particularity, and the charge is specific enough to protect the defendant against a prosecution for the same offense. *Id.* Neither Quintanilla nor this Court suggested the indictment itself was legally insufficient. Instead, Quintanilla argued and this Court concluded that dismissal under Rule 12(b)(3)(B)(v) was required because "the Government cannot prove beyond a reasonable doubt that the Defendant 'forcibly' resisted, opposed, or interfered with officers' duties within the meaning of 18 U.S.C. § 111(a)" and "cannot prove beyond a reasonable doubt that the Defendant inflicted SA Carl's scrape under [18] U.S.C. § 111(b)." (Ct's Order at pp. 9, 19).

The Fifth Circuit has explained that "[a] defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence, for an indictment returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for trial of the charge on the merits." *United States v. Mann*, 517 F.2d 259, 267 (5th Cir. 1975), *citing Costello v. United States*, 350 U.S. 359, 363 (1956). To be sure, the Fifth Circuit has permitted consideration of pretrial motions to dismiss challenging the viability of the charges *as a matter of law*. *United States v. Flores*, 404 F.3d 320, 324 (5th Cir. 2005), *abrogated on other*

*grounds*, *Abramski v. United States*, 573 U.S. 169, 191 (2014). But, a court's review of the legal viability of charges is limited. The "propriety of granting a motion to dismiss an indictment under [Rule] 12 by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact." *Id.* While questions of law can properly be considered, *Flores*, 404 F.3d at 320, "'[t]here is no authority under Rule 12…to dismiss on the basis of a sufficiency-of-the-evidence defense which raises factual questions embraced in the general issue,'" *Mann*, 517 F.2d at 267, *quoting United States v. Brown*, 481 F.2d 1035, 1041 (8th Cir. 1973). Pretrial resolution is not appropriate in cases where the motion depends on resolving questions of fact. *See United States v. Rafoi*, 60 F.4th 982, 994 (5th Cir. 2023); *United States v. Guthrie*, 720 F. App'x 199, 201 (5th Cir. 2018). "No circuit . . . allows [pretrial] review on an incomplete or disputed factual record." *United States v. Rodríguez-Rivera*, 918 F.3d 32, 35 (1st Cir. 2019) (cleaned up).[1] Because the questions of fact here are and were disputed, Rule 12 does not authorize pretrial resolution of the viability of the charge against Quintanilla.

    A pretrial motion to dismiss is "'capable of determination' if trial of the facts surrounding the commission of the alleged offense would be of *no assistance* in determining the validity of the defense" raised by that motion. *United States v. Covington*, 395 U.S. 57, 60 (1969)(emphasis added). The validity of Quintanilla's contentions that the government could not prove that Quintanilla acted "forcibly" or that he "inflicted" the injury suffered by HSI SA William Carl, are necessarily fact-dependent inquiries, as illustrated during the hearing on the motion, the legal authority proffered by the government, and this Court's dispositive findings. Whether Quintanilla's conduct can establish a violation of 18 U.S.C. 111(a) & (b) cannot be determined

---

[1] *See also United States v. Wedd*, 993 F.3d 104, 121 (2d Cir. 2021); *United States v. Sholley-Gonzalez*, 996 F.3d 887, 893 (8th Cir. 2021); *United States v. Pope*, 613 F.3d 1255, 1257 (10th Cir. 2010) (Gorsuch, J.) ("If contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial.").

**U.S. Motion to Reconsider**                                                                                                              3

without evaluations—entrusted to a jury—of the testimony of the agents, their perceptions and credibility, and the videos taken by TX DPS.

This Court's findings went beyond what Rule 12 allows and intruded on the jury's role. To cite just one example: This Court characterized the window breach as "barely perceptible in the body camera footage of the incident" and found that "the Defendant did not maneuver his vehicle in a way that would reasonably have inspired the officers' fear." (Ct. Order at p. 15). What conclusions can be made concerning Quintanilla's and the agents' actions and perceptions by viewing the video is classically within the exclusive purview of the jury in determining its verdict. *See United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010)(the determination of the import of the government's evidence trespasses on the jury's role).

Additionally, it should be noted that although the government was not required to provide its theory of prosecution or its view of the facts in response to this motion to dismiss, it did so. However, at no time did the government contend that it was making a full proffer of the evidence it would use at trial. *See Wedd*, 933 F.3d at 121 (explaining that a district court cannot require the government to present all its evidence in response to a Rule 12 motion). Neither did the government concede that all operative facts were undisputed. It simply cannot be said that a trial would be of "no assistance" in determining the validity of Quintanilla's defense. At a trial on the merits, and after the introduction of all relevant evidence, the factual questions posed by the evidence here can and will be resolved by a jury, whose exclusive province it is to do so.

**II. Suppression was unwarranted.**

This Court found reasonable suspicion supported the stop of Quintanilla's vehicle but then concluded the expansion of that lawful seizure was unreasonable. The Court concluded the window break was an unreasonable expansion of the seizure; Quintanilla's warrantless arrest was unlawful; and the agents used excessive force to arrest Quintanilla. As a sanction for this allegedly excessive force, this Court suppressed evidence of the "observations and recordings (visual and audio)" of Quintanilla's "alleged resistance." (Ct Order at pp. 25-34). These conclusions are erroneous.

Turning first to this Court's finding that the agents acted unreasonably by breaking Quintanilla's window, well-established precedent holds that once a motor vehicle has been lawfully detained (as here), officers may order the driver to exit the vehicle without violating the Fourth Amendment "because the government's 'legitimate and weighty' interests in officer safety outweigh the *de minimis* additional intrusion of requiring a driver, already lawfully stopped, to exit the vehicle." *Arizona v. Johnson*, 555 U.S. 323, 331 (2009); *Pennsylvania v. Mimms*, 434 U.S. 694 (1977). Because agents can lawfully order drivers to exit their vehicles, it follows that they can use reasonable force to execute those orders. *Helvie v. Jenkins*, 66 F.4th 1227, 1238 (10th Cir. 2023); *Graham v. Connor*, 490 U.S. 386, 396 (1989). Here, Quintanilla refused agents' lawful commands. He did not turn off the vehicle's engine; he did not roll down the window or open the doors; and he did not exit the vehicle. While Quintanilla did show an identification document to DO Hernandez, he did not comply with the other commands even after being advised that the window would be breached if he did not comply. Quintanilla had every opportunity to comply; yet he did not. After advising that the window would be broken, SA Carl, holding the window break tool, slowly put on his gloves while standing next to Quintanilla's truck, then attempted to pull open truck's back door and signaled to Quintanilla to roll down the window before attempting to use the window break tool. Quintanilla did not comply with any of these efforts to execute the agents' lawful commands. Under these circumstances, it was reasonable for agents to use the only means left to them to secure his compliance.

Contrary to this Court's decision, there was probable cause to arrest Quintanilla. Quintanilla's actions provided probable cause to arrest him, under both federal and state law. As this Court found, the evidence seems to support the conclusion that Quintanilla believed the agents were officers of some kind. They made their demands clear. Indeed, as the Court observed, Quintanilla showed his identification document after DO Hernandez called him by name and demanded Quintanilla show his ID. And, yet he failed to comply with the other lawful commands. After advising Quintanilla that agents would break the window if he did not comply but before attempting to breach the window, SA Carl first pulled on the back door handle, signaled to

Quintanilla that he should roll down his window, and then pulled on the driver's door handle and employed the window-break tool. As SA Carl was doing so, Quintanilla turned the wheel toward SA Carl and away from the curb, accelerating quickly in a direction away from where he was stopped. In the process of driving away with SA Carl holding the driver's door handle and attempting to breach the truck's window; SA Carl's arm was caught in the window, injuring him. Even after his path of travel forward was impeded by TX DPS, while SA Carl was again pulling on the door handle, Quintanilla put his truck in reverse and backed up until the trailer impacted an agent's vehicle that had pulled up to block Quintanilla's path. While there is dispute as to what the video depicts concerning the timing of SA Carl's breach of the window, there is no ambiguity in the recording that SA Carl was pulling on the door handle and was very close to the vehicle when Quintanilla accelerated the vehicle to drive away, that in doing so, he turned the wheel away from the curb and toward SA Carl before accelerating away.[2] Quintanilla's forcible resistance, impedance, opposition, and interference with officers here gave rise to probable cause to arrest him at least for violating 18 U.S.C. § 111(a), and the enhancement in subsection (b), as a lawfully empaneled grand jury found. It is also important to note that Quintanilla's conduct also provided probable cause to arrest him for the state law felony, evading with a motor vehicle, a violation of Texas Penal Code, Section 38.04. This conduct occurred in the agents' presence and thus

---

[2] While SA Carl testified that he attempted to breach the window when Quintanilla drove away or because Quintanilla drove away, a jury should be permitted to determine, for itself, the sequence of events. It should be permitted to view the video and make its own independent factual determination. This is the type of determination that is exclusively within its purview.

**U.S. Motion to Reconsider**                                                                                                         6

Quintanilla's warrantless arrest under these provisions was lawful[3]. *District of Columbia v. Wesby*, 583 U.S. 48, 56 (2018)( A warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence). It is well-settled that a warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause. *United States v. Watson,* 423 U.S. 411, 424 (1976); *see Atwater v. Lago Vista,* 532 U.S. 318, 354  (2001) (stating that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender").

In any event, the force the agents used against him was reasonable under the circumstances. "A court must measure the force used under the facts as a reasonable officer would receive them, not necessarily against the historical facts." *Griggs v. Brewer*, 841 F.3d 308 (5th Cir. 2016). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable

---

[3] The government likewise notes that agents had authority under 8 U.S.C. § 1357(a)(2) to make a warrantless arrest of Quintanilla as "an alien in the United States…in violation of any such law or regulation."  The tip reported that Quintantilla was in the United States illegally, was corroborated by surveillance and database checks which would have returned results for immigration benefits, information that he was born in Honduras, and other database searches.  Although the agents did not record, with any precision, their efforts to investigate the tip, DO Hernandez testified about his efforts.  Further, it is important to note that when asked for identification, Quintanilla provided only his Honduran identification document, reflecting his birth in Honduras.  He presented no U.S. identification document.  His resistance and attempted flight from officers supported an inference of his guilt—that is that he was and is in the United States illegally.  United States v. Ballard, 423 F.2d 127, 133 (5th Cir. 1970)("It is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself.").  That he attempted twice to escape officers by driving forward until blocked and driving in reverse until blocked, supported the conclusion that he was "likely to escape before a warrant can be obtained." These factors worked together to establish "reason to believe" Quintanilla's warrantless arrest was appropriate under Section 1357(a)(2).   Whether his removability had been established at or prior to this encounter is irrelevant.  Indeed, Section 1357 contemplates an immigration officer will subsequently make that determination where it provides: "the alien arrested shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States."

officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396-97. Courts are instructed to be cautious about second-guessing the officers' assessments of the threat level. *Harmon v. City of Arlington*, 16 F.4th 1159, 1163 (5th Cir. 2021). "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes…giving them 'fair leeway for enforcing the law in the community's protection.'" *Helen v. North Carolina*, 574 U.S. 54, 60-61 (2014), *quoting Brinegar v. United States*, 338 U.S. 160, 176 (1949). Even a mistaken belief can be a reasonable belief. *Wilson v. City of Bastrop*, 26 F.4th 709, 715 (5th Cir. 2022). Under this framework and the facts and circumstances at issue here, the actions of the agents were reasonable.

Although Quintanilla pulled over in response to the agents' activation of their lights, the only verbal command with which he arguably complied was the command to show identification. He otherwise resisted the agents' efforts to investigate safely, including by remaining inside a multi-thousand pound truck and trailer with a running engine and tinted windows. As agents increased their efforts to secure his compliance, Quintanilla continued to resist, even driving away with SA Carl holding the door handle and attempting to breach the window, accelerating until his path forward was blocked by the quick actions of a TX DPS agent who moved his vehicle to block Quintanilla's path,[4] then backing up until he collided with another agent's vehicle, again away from agents and after the window had been breached. Even after the truck and trailer were blocked by agents' vehicles and the window was removed, Quintanilla continued to resist, declining to exit the vehicle, resisting being pulled from the vehicle, resisting agents' efforts to cuff him, holding his arms tightly in front of him and into his core, requiring multiple agents and more than 90 seconds to secure him. Once Quintanilla was handcuffed, he was immediately brought to his feet, and the force being applied to secure his compliance ceased. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, ... violates the Fourth

---

[4] "It is indisputable that an automobile ... can be used as a deadly weapon". *United States v. Aceves–Rosales,* 832 F.2d 1155, 1157 (9th Cir. 1987).

Amendment." *Graham*, 490 U.S. at 396. Considered in light of relevant authority, Quintanilla's continued resistance throughout the encounter with agents directly and proportionately correlated with the increased intensity of the law enforcement officers' actions and was thus reasonable and should not have been considered excessive force.

Even if this conduct did constitute excessive force, this Court's conclusion that suppression would result is erroneous. Citing a footnote in *Delaney v. Giarrusso*, 633 F.2d 1126, 1129 n.2 (5th Cir. 1981),[5] this Court suppressed "all observations and recordings (visual and audio)," capturing Quintanilla's "alleged resistance." It is not clear precisely what evidence the Court intends to suppress by this Order. Even assuming the coverage of the Order is narrowly confined to the two recordings of the agents' interactions with Quintanilla, captured by the body cameras worn by the TX DPS agents, the decision to suppress this evidence does not comport with the limitations on the application of the exclusionary rule. The exclusionary rule reaches only evidence obtained as a direct result of an illegal search or seizure or found to be derivative of an illegality. *Segura v. United States*, 468 U.S. 796, 804 (1984). "[B]ut-for causality is…a necessary…condition for suppression." *Hudson v. Michigan*, 547 U.S. 586 (2006). There is no *causal connection* between these recordings and the agents' alleged excessive force. While the recordings capture aspects of the encounter between Quintanilla and the agents, they were not obtained as a direct result of the alleged illegality. Instead, the recordings would have captured the encounter regardless of the alleged illegality. The TX DPS agents were recording from a location they were entitled to be;

---

[5] The footnote in *Delaney* states: "The argument has been advanced that the use of excessive force in arresting is in violation of the Constitution and thus deserving of deterrence by the exclusionary rule. *See* W. La Fave, Search and Seizure: A Treatise of the Fourth Amendment s 5.1(d) at 240 (1978 & 1980 Supp.)." The current version of this treatise acknowledges that "such a claim would appear to be very substantially weakened by" intervening Supreme Court precedent. Wayne R. LaFave, *Search & Seizure: A Treatise on the Fourth Amendment* § 5.1(d) (6th ed. Nov. 2025 update).

**U.S. Motion to Reconsider**                                                                                                                  9

they were recording events that were occurring in a public location and in public view. And there is no evidence the recording caused the actions characterized by this Court as excessive force.[6]

Moreover, aside from the suggestion in *Delaney* that an "argument ha[d] been advanced"—circa 1981—for the theory this Court relied on, the government could not locate any case in which the Supreme Court or Fifth Circuit authorized the exclusion or suppression of evidence as a sanction for "excessive force." And other circuits have disapproved of the suppression of evidence collateral to the alleged excessive force. *See United States v. Watson*, 558 F.3d 702 (7th Cir. 2009); *United States v. Garcia-Hernandez*, 659 F.3d 108 (1st Cir. 2011); *United States v. Collins*, 714 F.3d 540 (7th Cir. 2013); *United States v. Morales*, 385 Fed. App'x 165, 167 (3d Cir. 2010). *Cf United States v. Ankeny*, 502 F.3d 829 (9th Cir. 2007) (in considering excessive force used during the execution of a search warrant, the court noted it could suppress evidence but found no causal connection between the excessive force and the evidence proposed to be suppressed). Accordingly, even the determination that the agents' actions in this matter constituted excessive force, the "observations and recordings (visual and audio)" should not have been suppressed under the exclusionary rule.

### III. Dismissal on Grounds of Outrageous Government Conduct Is Not Warranted.

Turning next to this Court's decision to dismiss the indictment as a sanction for what it concluded was outrageous government conduct, the government likewise asks this Court to reconsider this dismissal and reinstate the charge. A defendant asserting the defense of outrageous government conduct "has an extremely high burden of proof," a burden that Quintanilla has not satisfied. *United States v. Asibor*, 109 F.3d 1023, 1039 (5th Cir. 1997). An indictment may be dismissed on this basis only when the governmental participation is so outrageous or fundamentally unfair as to compel a finding the defendant was entrapped as a matter of law. *United*

---

[6] Even on its own terms, this Court's reasoning that suppression is necessary because it is the only way to address the agents' conduct would be erroneous. Regardless whether Quintanilla could successfully sue the agents in their personal capacities, agency administrative review is available, and litigants can pursue damages under the Federal Tort Claims Act when their claims fall within that Act's waiver of sovereign immunity.

**U.S. Motion to Reconsider**                                                                                     10

*States v. Graves*, 556 F.2d 1319, 1322 (5th Cir. 1977). Dismissal is proper only "in the rarest of circumstances" where the defendant proves "both substantial government involvement in the offense and a passive role by the defendant." *United States v. Gutierrez*, 343 F.3d 415, 421 (5th Cir. 2003). A defendant who actively participates in the offense may not avail himself of the defense. *United States v. Arteaga*, 807 F.2d 424, 427 (5th Cir. 1986). Despite this extremely rigorous standard, the Court concluded this case presented the "rarest of circumstances" warranting dismissal. Respectfully, the government disagrees.

First, under no plausible view of the facts did Quintanilla play a purely "passive role." He actively and continuously resisted officers, including by continuing to drive his full-size, heavy-duty truck even after the officers ordered him out of it. Second, while the government disputes and rejects many of this Court's critiques of the officers' investigation and decisions about where and when to approach Quintanilla, those actions did not "entrap" Quintanilla into defying the officers' instructions once they approached him.

Moreover, this Court's suggestion that the government's decision to charge Quintanilla with a crime was somehow "shocking" or "offends due process" (Ct's Order at pp. 39-40) is wholly unwarranted. A duly empaneled grand jury returned the indictment against Quintanilla. And that indictment signified that, as a matter of law, the grand jury found probable cause for each element of the charged offense. *See Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1976). As such, the decision to charge Quintanilla cannot form any part of the basis for a finding of outrageous government conduct. And, as discussed above, this Court's conclusion that the indictment could not be proven exceeded its authority, as it was unfairly based on disputed and incomplete evidence. Accordingly, the government respectfully requests that this Court reconsider and withdraw this portion of its Order.

## IV. Conclusion.

This Court should reconsider and withdraw its decisions dismissing the indictment and suppressing evidence and schedule further proceedings on the charges against Quintanilla.

                                                           Respectfully submitted,

                                                           JUSTIN R. SIMMONS
                                                           UNITED STATES ATTORNEY

By: */s/ Sarah Wannarka*
      Sarah Wannarka
      Assistant United States Attorney
      Texas Bar No. 24013710
      601 N.W. Loop 410, Suite 600
      San Antonio, Texas 78216
      (210) 384-7100 (phone)
      (210) 384-7276 (fax)
      Sarah.Wannarka@usdoj.gov

### Certificate of Service

I certify that on November 19, 2025, I electronically filed this document with the Clerk of Court using the CM/ECF system.

☒ The CM/ECF system will send notification to the following CM/ECF participant(s):

                                                          Marina Douenat

                                                         */s/ Sarah Wannarka*
                                                         Sarah Wannarka
                                                         Assistant United States Attorney

United States District Court
Western District of Texas
San Antonio Division

| | |
|---|---|
| United States of America,<br>    Plaintiff,<br><br>v.<br><br>Jaime Alberto Quintanilla-Chavez,<br>    Defendant. | No. SA-25-CR-388-XR |

### ORDER

The Court having considered the Government's Motion to Reconsider, the Defense motions, and the entire record, hereby rescinds its Order dismissing the Indictment, and re-instates the Indictment in this cause.

Accordingly, both Defense motions to dismiss are denied.

SIGNED on the ___ day of November, 2025.

_____
HONORABLE XAVIER RODRIGUEZ
UNITED STATES DISTRICT COURT JUDGE
WESTERN DISTRICT OF TEXAS