UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § § § <br> v. § § <br> JAIME ALBERTO § <br> QUINTANILLA-CHAVEZ § | CAUSE NO. 5:25-cr-00388-XR |

**DEFENDANT'S RESPONSE IN OPPOSITION TO GOVERNMENT'S MOTION FOR RECONSIDERATION (Doc. 65)**

TO THE HONORABLE XAVIER RODRIGUEZ, U.S. DISTRICT JUDGE:

This Court issued an order dismissing the charge and suppressing evidence against Defendant Jaime Quintanilla-Chavez ("Jaime"). *See* Doc. 64. The government now moves the Court to reconsider (Doc. 65) this order and come to the opposite conclusion—on every issue. Yet the government just relitigates the same arguments it has already made—or arguments it had every chance to make before the Court issued the order. Jaime's motions were filed at the end of July 2025. An evidentiary hearing was set and held at the end of August 2025. The government submitted pre-hearing responses to Jaime's motions, mostly making the same points as its motion to reconsider. At the hearing, the government presented its evidence. After the hearing and in the nearly two months before the Court issued the order, the government did not file any further brief. But motions to reconsider are not chances for second bites at the apple. And regardless, the government cannot show—and has not shown—that every one of the Court's conclusions was a manifest error. The Court should deny the motion.

## Standard

Although the Fifth Circuit has not comprehensively set out the standard of review for a motion to reconsider in a criminal case, federal courts have borrowed from the civil context to arrive at a general standard prohibiting relitigating issues that could've (or have) been raised and requiring—as relevant here—a manifest error:

> Motions for reconsideration serve a narrow purpose. Such requests are often made, but granting the relief is rare, as it is an extraordinary remedy [and] should be used sparingly. Federal courts recognize
>
>> only three possible grounds for any motion for reconsideration: (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, and (3) the need to correct a clear error of law or prevent manifest injustice.
>
> Motions for reconsideration are not to be used to relitigate old matters or to present evidence that could have been raised prior to entry of judgment. Whatever may be the purpose of [a motion for reconsideration] it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge.

*United States v. Lopez*, 817 F. Supp. 2d 918, 932–33 (S.D. Miss. 2011) (denying government's motion to reconsider order suppressing evidence) (cleaned up); *see also United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009). This is essentially the same standard the Fifth Circuit uses in civil cases. *See, e.g., Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 128 (5th Cir. 2019).

Here, the government does not claim an intervening law change or new evidence, which leaves egregious error. Whether in the criminal or civil context, federal circuits require the movant to show "a manifest error[] of law or fact." *In re Rodriguez*, 695 F.3d 360, 371 (5th Cir. 2012); *see also Allen*, 573 F.3d at 53 (criminal case; requiring movant to show order was based on "a manifest error of law or was

clearly unjust"). A "manifest error" is "an obvious error that is plain and indisputable, and that amounts to a complete disregard of the controlling law." *Wease v. Ocwen Loan Servicing, L.L.C.*, 852 F. App'x 807, 809 (5th Cir. 2021) (quoting *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004)) (cleaned up). The government has shown no manifest error here. Quite the opposite: the Court's rulings were right.

## Argument

The government essentially argues that the Court committed a manifest error on each and every ground of dismissal and suppression. On each and every ground, the government is wrong. The Court's conclusions were correct.

### 1) The Court was correct to dismiss the charge for the inability to prove it as a matter of law, based on uncontested material facts.

Both parties and the Court agree on the standard that applies to Jaime's motion to dismiss for the government's inability to prove the charge. Federal Rule of Criminal Procedure 12(b)(1) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." If a pretrial motion presents a question of law in a case involving undisputed facts, Rule 12 authorizes the court to rule on the motion. *United States v. Flores*, 404 F.3d 320, 325 (5th Cir. 2005), *abrogated on other grounds by Abramski v. United States*, 573 U.S. 169, 191 (2014); *see* Fed. R. Crim. P. 12(d) (permitting the court to rule on a motion involving factual issues provided the court states its essential findings on the record). Otherwise, the court would waste resources by allowing a case to proceed to trial and later dismissing it based on the same legal argument and facts presented through a pretrial motion. *See Flores*, 404 F.3d at 325.

In ruling on such a challenge, the Court may assume the truth of the government's allegations. *See United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011).

The government argues the Court erred by granting the Rule 12 dismissal "where the evidence was disputed and required factual findings in order to resolve evidentiary conflicts or ambiguities, and by construing disputed facts against the government." Mot. to Rec. at 2; *see also* Mot. to Rec. at 2-4. Not so: the Court assumed the truth of the government's factual allegations and found those allegations insufficient to prove the charge. *See* Order at 8-20. Particularly where the government made a variety factual concessions—simplifying matters for the Court—throughout this case.

And the government only cites "one example" of the Court's alleged manifest error: "This Court characterized the window breach as 'barely perceptible in the body camera footage of the incident' and found that 'the Defendant did not maneuver his vehicle in a way that would reasonably have inspired the officers' fear.'" Mot. to Rec. at 3 (quoting Order at 15). But it is indisputable that the window breach was barely perceptible on the body camera footage of the incident. And, in any event, the government has conceded the window break was simultaneous to or just after the truck pulling away or in response to it, *see* ECF No. 46 at 5; ECF No. 47 at 1–2; 8/25 Hr'g, GEX 1 at 2:25; ECF No. 60, 8/25 Hr'g Tr. at 78:24–25, which means—as the Court correctly found—"SA Carl's *own* decision to smash the window *as* the Defendant moved forward, does not, under these circumstances, render the forward movement 'force' directed *toward* or *against* an officer," as a matter of law. *See* Order

4

at 14 (emphases in original). As a matter of law, the Court was right to conclude that Jaime did not "maneuver his vehicle in a way" that could constitute the use of force directed toward or against an officer, under the similar facts and holding in *Sophin v. United States*, 153 F. Supp. 3d 956 (W.D. Tex. 2015), which also concluded that merely driving slowly *away* from an officer did not and could not constitute force against an officer under 18 U.S.C. § 111. *See* Order at 14-15; *see also United States v. Williams,* 602 F.3d 313, 317-18 (5th Cir. 2010) (the force must be the defendant's force, not the officer's force).

Alternatively and additionally, the Court concluded, again as a matter of law based on uncontested material facts, that the charge could not stand because SA Carl "inflicted" his own injury by breaking the window as the truck drove forward. *See* Order at 15-19; *see also Williams,* 602 F.3d at 317-18. This is an independent basis to dismiss, apart from the "force" conclusion above.

The government also claims it did not proffer that all evidence was presented or that all facts were uncontested. *See* Mot. to Rec. at 4. But the government conceded in open court that its charge was only based on Agent Carl's cutting himself upon breaking the window as Jaime drove forward. ECF No. 47 at 1–2; ECF No. 29, 7/10 Hr'g Tr. at 11–12. Under any reasonable view of the evidence, even if more were presented, the charge cannot stand. And even in the government's motion to reconsider, it still doesn't proffer any evidence it would present that would change the outcome, and—other than the "one example" refuted above—the government does not pinpoint any contested material fact. *See* Mot. to Rec. at 2-4.

Last, recall that one of the Fifth Circuit's purposes in permitting pretrial dismissal for inability to prove the charge is to "avoid[] the waste of judicial resources that results from legally meritless cases being sent to trial." *See Flores*, 404 F.3d at 325 (cleaned up). And here, if this case proceeded to trial, it is clear that the charge would not survive any reasonable jury—or a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29. And under the Rule 29 standard, only reasonable inferences are permitted in favor of guilt beyond a reasonable doubt; a guilty verdict "may not rest on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference." *United States v. Ganji*, 880 F.3d 760, 767 (5th Cir. 2018) (cleaned up). Applying that standard, it is clear that the only trial outcome is an acquittal, whether by the jury or the Court under Rule 29. Allowing this case to proceed to trial would contravene judicial economy, waste taxpayer dollars, and needlessly take up the jurors' time—all to reach a foregone conclusion. *See Flores*, 404 F.3d at 325. The Court was right to dismiss.

**2) The Court was correct to suppress the evidence under the Fourth Amendment.**

The government claims the Court erred by suppressing the evidence under the Fourth Amendment. In analyzing the suppression issues, it is useful to keep in mind the Fifth Circuit's extremely deferential standard of review. The Circuit "view[s] the evidence in the light most favorable to the party prevailing below—here, [the defendant]." *United States v. Freeman*, 914 F.3d 337, 341 (5th Cir. 2019) (affirming order suppressing evidence). "The district court's ruling should be upheld if there is any reasonable view of the evidence to support it." *Id.* at 342. Legal conclusions are

6

reviewed de novo and fact findings for clear error, and "[a] factual finding that is plausible based on the record as a whole is not clearly erroneous." *United States v. Martinez*, 102 F.4th 677, 683 (5th Cir. 2024) (cleaned up). Key here, when a district court's suppression ruling "is based on live oral testimony, the clearly erroneous standard is particularly strong because the judge had the opportunity to observe the demeanor of the witnesses." *Id.* (same). In particular, the Circuit will not "second-guess" the lower court's credibility determinations. *United States v. Larremore*, 150 F.4th 463, 473 (5th Cir. 2025). And the Circuit "may affirm on any basis established by the record." *Martinez*, 102 F.4th at 683.

The government claims this Court committed four separate manifest errors. On each claim, the government is wrong.

### a) The Court was right to find the agents expanded the scope of the seizure without commensurate reasonable suspicion.

The government claims the Court erred by concluding the window break was an unreasonable expansion of the seizure. *See* Mot. to Rec. at 5. There was no error. True, officers conducting a lawful seizure can order occupants to exit a vehicle. *See Pennsylvania v. Mimms*, 434 U.S. 694 (1977). But the government cites no precedent that automatically allows officers to rapidly break a vehicle's window if the occupants don't immediately comply with such an order. Under the totality of the unique circumstances here, the Court's conclusion—that the choice to break the window exceeded the reasonable scope of the seizure—was right, especially considering:

- Agent testimony that HSI has a "break windows first, ask questions later" policy—which is the inverse of a reasonable response to a specific situation.

7

- The Court's findings that agents' absurd officer-safety claims were not credible, which a reviewing court will not "second-guess." *Larremore*, 150 F.4th at 473.

- The officers appeared to break the window not out of safety concerns, but out of impatience: "I ain't got time for this." *See* 8/25 Hr'g, GEX 1 at 01:38–40.

- Illegal presence is a minor civil offense.

- Jaime was otherwise compliant, pulling over and showing his ID.

- The agents did not ask Jaime any immigration-related questions or, seeing his fear, explain to him the basis for the seizure.

- The Court's findings to discredit the agents' absurd claims of officer-safety concerns, virtually unreviewable on appeal. See Order at 27.

*See* Order at 27-29 & n.12. The Court's unreasonable expansion conclusion was right. *See Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009). Because the window break and the totality of the agents' use of aggressive tactics preceded and triggered Jaime's forward movement and the subsequent events, suppression is a proper remedy—even before getting to the excessive force question.

**b) The Court was right to conclude that probable cause did not justify the seizure.**

The government also claims the Court committed manifest error by concluding the seizure was not justified by probable cause. *See* Mot. to Rec. at 5-6 & n.3. Instead, the government claims there was probable cause to arrest Jaime for forcible resistance under § 111 or for state-law evading arrest. But this is the first time the government made such a claim, and motions to reconsider are not tools to raise new claims. *See, e.g.*, *Rodriguez*, 695 F.3d at 371; *Lopez*, 817 F. Supp. 2d at 932–33.

Regardless, the government is wrong. Any resistance resulted from the agents' unreasonably aggressive seizure, including the decision to almost immediately break the truck window. And, as the Court already found, immigration officers should not be given "carte blanche to evade the requirements of the Fourth Amendment by manufacturing a felony during a *Terry* stop." Order at 39-40. The unlawful seizure triggered any resistance, so the observations of the alleged resistance should be suppressed. *Cf. Adams v. Thompson*, 557 F. Supp. 405, 411 (M.D. La. 1983) (relying in part on the right to resist unlawful arrest,[1] finding that resistance to unlawful seizure did not give officer probable cause to seize for resistance).

And even assuming arguendo that Jaime resisted the illegal seizure and that such resistance gave the agents probable cause to arrest him,[2] that does not retroactively validate the unlawfully aggressive seizure that resulted in the alleged resistance. In *Sauceda v. City of San Benito, Texas*, for instance, the Fifth Circuit reversed a grant of summary judgment to an officer for an illegal seizure, in part because "[e]ven if an unlawful arrest becomes lawful moments later by virtue of the arrestee's resistance, there is no reason why the officer cannot be held liable for the

---

[1] The Supreme Court has recognized the right to resist unlawful arrest. *See John Bad Elk v. United States*, 177 U.S. 529, 535 (1900).

[2] As far as arresting Jaime for evading under Texas state law, the Court earlier asked the parties to brief the issue of whether these federal agents were authorized to seize for a state offense. Jaime obliged by briefing the issue. *See* Constitutional Mot. to Suppress & Dismiss (Doc. 38) at 8-9. The government never did. And now, despite being asked to brief that issue and declining to do so, the government now asks the Court—in a motion to reconsider, which is not a vehicle for raising new issues—to find an arrest supported by a state law, again without proving that these federal officers had authority to seize for such a state-law violation. *See* Constitutional Mot. at 8-9; *United States v. Sealed Juv. 1,* 255 F.3d 213, 216 (5th Cir. 2001). The Court need not reverse itself on this ground.

9

unlawful part." 78 F.4th 174, 188 (5th Cir. 2023). The difference here, of course, is that the remedy is not damages, but the exclusionary rule: suppressing the results of the unlawful seizure. *See United States v. Beck*, 602 F.2d 726, 729–30 (5th Cir. 1979) (where unlawful seizure caused defendant to discard contraband, the discarded contraband did not provide officers a valid basis to arrest and seize evidence); *United States v. Hernandez*, 279 F.3d 302, 304–05 (5th Cir. 2002).[3]

Finally, even if any alleged resistance gave the agents probable cause to arrest Jamie (a different question than whether the unlawful seizure triggers the exclusionary rule), that did not give the agents the right to effectuate the arrest using excessive force, to which new now turn.

### c) The Court was correct to conclude that, even if probable cause supported the seizure, the agents used excessive force.

Even assuming there was probable cause for an arrest, that does not allow law enforcement to use excessive force. *See Bailey v. Ramos*, 125 F.4th 667, 680 (5th Cir. 2025) ("we must . . . analyze the excessive force claim without regard to whether the arrest itself was justified"). But the agents did use excessive force to seize Jaime, as the Court has also comprehensively concluded. *See* Order at 32-34. The government claims otherwise, relitigating issues that have already been raised and ruled on. *See* Mot. to Rec. at 7-9. The government's claim is not proper for a motion to reconsider. *See Rodriguez*, 695 F.3d at 371; *Allen*, 573 F.3d at 53; *Lopez*, 817 F. Supp. 2d at 932–

---

[3] In a footnote, the government also claims agents had probable cause to arrest Jaime for unlawful presence under 18 U.S.C. § 1357(a)(2). *See* Mot. to Rec. at 7 n.3. But the Court has already comprehensively shown why that was not so. *See* Order at 29-32. In any event, that issue has been raised and ruled on, so it is not properly urged in a motion to reconsider.

33. Far from a manifest error, the Court's conclusion was correct. Especially where excessive force is a totality-of-the-circumstances inquiry hinging on the "factbound" nature of each case, *Barnes v. Felix*, 152 F.4th 669, 674 (5th Cir. 2025), and especially here where the Court's decision was based in part on findings—from live testimony—that the agents lacked credibility, *see Larremore*, 150 F.4th at 473.

### d) For any or all of these constitutional violations, the Court was right to apply the exclusionary rule.

For either (1) the unreasonable expansion of the seizure by the choice to break the window (which could be framed as a warrantless de facto arrest without probable cause) or (2) for use of excessive force (even assuming probable cause to arrest), the Court was right to apply the exclusionary rule to the evidence. *See* Order at 33-34.

The government only contests the latter decision, claiming that even if the officers used excessive force, the exclusionary rule is not the proper remedy. *See* Mot. to Rec. at 9-10. But, despite having months to brief this issue before the Court issued its Order, the government never raised any claims that the exclusionary rule should not apply for any constitutional violation in this case. *See generally* Govt. Resp. to Constitutional Mot. (Doc. 46). And a motion to reconsider is not a proper mechanism to raise a new claim that could've been raised before the Order. *See Rodriguez*, 695 F.3d at 371; *Allen*, 573 F.3d at 53; *Lopez*, 817 F. Supp. 2d at 932–33. So the Court should conclude that the government—which bears the burden to prove any exclusionary rule exception, *see United States v. Runyan*, 275 F.3d 449, 456 (5th Cir. 2001)—has waived any claim that the exclusionary rule should not apply to any constitutional violation in this case. *See, e.g., United States v. Johnson*, No. CRIM.

11

3:06-CR-016-D, 2006 WL 1041148, at *6 (N.D. Tex. Apr. 20, 2006) (finding that government waived any exclusionary rule exceptions by failing to timely raise any such exceptions, despite bearing the burden to prove them).

Regardless, as the Court has already concluded, the Court's decision to apply the exclusionary rule was correct. Since the agents caused the alleged resistance with their own unconstitutionally aggressive actions, the government should not be able use the evidence resulting from those actions—the agents' observations of the alleged resistance, the recordings of the alleged resistance, and any testimony about same— in this prosecution. *See* Order at 33-34.

At the very least, the Court's decision to apply the exclusionary rule was not a manifest error. The government cites no binding precedent to the contrary. So the government has now shown "an obvious error that is plain and indisputable, and that amounts to a complete disregard of the controlling law." *Wease v. Ocwen Loan Servicing, L.L.C.*, 852 F. App'x 807, 809 (5th Cir. 2021) (cleaned up) (defining a manifest error in the context of a motion to reconsider).

**3) The Court did was right to suppress and dismiss by concluding the agents violated due process by engaging in outrageous conduct.**

The Court was also correct to conclude that the government engaged in outrageous conduct in violation of due process. *See* Order at 35-40. The government claims this standard was not met because Jaime's role in the affair was more than "passive." *See* Mot. to Rec. at 11. The government is wrong. The standard requires, in relevant part, that the defendant did not actively participate in the offense, and the

vast swath of case law finding active participation involves lengthy episodes where the defendant makes multiple decisions to stay involved in a long-running crime over time. *See, e.g., United States v. Gutierrez*, 343 F.3d 415, 421 (5th Cir. 2003); *United States v. Tobias*, 662 F.2d 381, 383-87 (5th Cir. 1981). That is far from the case here, where Jaime simply had a split-second, instinctive reaction to the agents' unreasonably aggressive actions. And the Court has already found Jaime was not an active or predisposed participant in the offense—particularly where the government has charged Jaime with forcibly resisting an agent based on the agent's own constitutionally unreasonable use of force. *See* Order at 38.

Last, the government complains that "this Court's suggestion that the government's decision to charge Quintanilla with a crime was somehow 'shocking' or 'offends due process' (Ct's Order at pp. 39-40) is wholly unwarranted," because a grand jury found probable cause. *See* Mot. to Rec. at 10. But whether a grand jury found probable cause is simply a separate issue from whether the government or its agents have engaged in outrageous conduct. Far from constituting a manifest error, the Court's due process ruling was correct.

## CONCLUSION

The government had its bite at the apple. And yet, every point it raises now is one it raised—or could have raised—before. A motion to reconsider is not the proper vehicle for such claims. In any event, the government must show the Court committed a manifest error of law in each ground of dismissal and suppression. It has not made such a showing. The Court should deny reconsideration.

Respectfully submitted.

MAUREEN SCOTT FRANCO
Federal Public Defender


//s/ MARINA THAIS DOUENAT
Assistant Federal Public Defender
Western District of Texas
300 Convent Street, Suite 2300
San Antonio, TX 78205
Tel.:(210) 472–6700
Fax: (210) 472-4454
Bar Number: 00798310
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of December 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the AUSA of record.


/s/ MARINA THAIS DOUENAT
*Attorney for Defendant*

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § § § |
| v. | § § CAUSE NO. 5:25-cr-00388-XR |
| JAIME ALBERTO QUINTANILLA-CHAVEZ | § § § |

**ORDER**

For the reasons Defendant has argued, the Court **DENIES** the government's motion to reconsider the order dismissing the indictment. The government argues claims already raised and ruled on. Or it raises new claims or arguments it could have raised before, all of which the Court concludes are waived. And regardless, the Court's original Order was correct in every respect.

SO ORDERED on this the _____ day of _____, 2025.

_____
XAVIER RODRIGUEZ
United States District Judge